# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME WAYNE PARKER,<br><br>Plaintiff,<br><br>vs.<br><br>BILL JOHN BAKER, KAYLEE BOYKIN, and ANGELA WILSON,<br><br>Defendants. | 2:19-cv-1439-NR |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Before the Court is *pro se* Plaintiff Jerome Wayne Parker's Motion for Leave to Proceed *in forma pauperis* [ECF 1]. For the following reasons, the Court will grant Mr. Parker's motion, but then dismiss his complaint under 28 U.S.C. § 1915 for lack of subject matter jurisdiction.

## I.  Background

Mr. Parker moved for leave to proceed *in forma pauperis* on November 5, 2019, attaching a proposed complaint and 19 accompanying exhibits. The complaint names three individuals as defendants—Bill John Baker, Kaylee Boykin, and Angela Wilson. Mr. Parker identifies these individuals as the "Principle Chief," "Registration Supervisor," and a "Registration" agent of the Cherokee Nation tribe.

In effect, Mr. Parker alleges that he was wrongfully denied membership in Cherokee Nation by the Defendants.[1] Specifically, Mr. Parker states that he

---

[1]  Of note, Mr. Parker states that he is "filing this complaint on behalf of my family and myself," [ECF 1-1 at p. 6], and attaches correspondence from Cherokee Nation denying membership to individuals other than himself. To the extent Mr. Parker is seeking to assert claims on behalf of his family members, he cannot do so because he is not a licensed attorney and his family members are not named plaintiffs. *See Murray on behalf of Purnell v. City of Philadelphia,* 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other

"applied [for tribal membership] twice and was denied, because the Cherokee Nation said the number 2460 ain't my ancestor's number" and told him that he "ha[d] to be on the final rolls of 1899 to 1906" to enroll. [ECF 1-1 at p. 4]; *see also* [*Id.* at p. 6] ("We have applied 2 times within seven months only to be told the Cherokee Application number 2490 is not my great great Grandfather W.A. Williams[.]").

According to Mr. Parker, this denial of membership was wrongful because "[t]he Cherokee Nation ignored [his family's] history … by not recognizing that [they] are Indians by blood." [*Id.*]. He further contends that this denial implicates or violates various provisions of the United States Constitution and the "Cherokee Constitution of 1828," as well as "Article 9 of the Cherokee Treaty of 1866." [*Id.* at p. 3]. Based on the alleged "violation of [his] Constitutional Rights" and "emotional stress from being rejected after seven months with the Cherokee Nation (Oklahoma)," Mr. Parker demands $6,000,000.00 in monetary damages and "[f]ederal [r]ecognition" of his Cherokee status, presumably in the form of injunctive relief from this Court. [*Id.* at p. 5].

Attached to Mr. Parker's complaint are, among other things, several letters from the Cherokee Nation denying the membership applications of Mr. Parker and various other individuals (presumably Mr. Parker's family members or acquaintances). [*See* ECF 1-13; 1-14; 1-15; 1-16; 1-17; 1-18]. These denial letters state: "Per the Cherokee Nation Constitution, in order to receive Citizenship, you must be able to prove you are a descendent of an original enrollee listed on the Dawes Commission Rolls." [ECF 1-15 at p. 1]. Each of the attached letters says that the applicant has failed to sustain this burden because, according to the tribe, the proffered roll number "does not belong to your ancestor." [*Id.*] Each letter also informs the applicant that, "this decision may be appealed by filing a Notice with the Cherokee Nation Registrar … within 30 days of the date you receive this decision." [*Id.* at pp. 1-2]. The complaint does not say whether Mr. Parker, or any of his family members, sought to avail themselves of this appeals process.

---

parties in federal court."). The Court thus considers Mr. Parker's claim only insofar as he alleges that his own application was wrongfully denied.

## II. Standard of Review

"Plaintiffs filing lawsuits in federal court generally need to pay a filing fee. But that does not mean the courthouse doors are closed to those who cannot afford it." *Brown v. Sage*, 941 F.3d 655, 657 (3d Cir. 2019). Under 28 U.S.C. § 1915, indigent plaintiffs can avoid paying fees and costs if they successfully apply to the Court for leave to proceed "*in forma pauperis.*" *Id*. This statute serves the admirable purpose of "ensur[ing] that no person is barred from 'pursuing meaningful litigation' solely because of an inability to pay administrative court fees." *Id*. at 659.

But Congress "recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* Thus, under 28 U.S.C. § 1915(e)(2)(B), a district court that has granted *in forma pauperis* status to a litigant "must review the pleadings and dismiss the matter if it determines that the action is frivolous, malicious, or fails to set forth a proper basis for th[e] Court's subject matter jurisdiction." *Duglas v. Kamper*, No. 19-CV-3010, 2019 WL 3230931, at *1 (E.D. Pa. July 17, 2019); *see also Picozzi v. Guy Peiagelee & Sons*, 313 F. Supp. 3d 600, 602 (E.D. Pa. 2018) ("[Section 1915] require[s] the Court to dismiss the Complaint if it is frivolous or fails to state a claim."); 28 U.S.C. § 1915(e)(2)(B) ("[T]he court *shall* dismiss the case *at any time* if the court determines that … the action or appeal–(i)is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune to that relief.") (emphasis added).

"Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Picozzi*, 313 F. Supp. 3d at 602. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, a complaint that "pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). This determination is "context-specific," and it

"requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 786–87.

Separately, as always, the Court "also has the authority to examine subject-matter jurisdiction *sua sponte*," and to dismiss the complaint if it finds jurisdiction lacking. *Fenton v. Pennsylvania Dep't of Corr.*, No. CV 18-5484, 2019 WL 398929, at *3 (E.D. Pa. Jan. 31, 2019). Numerous district courts in this Circuit have dismissed *in forma pauperis* complaints based on a determination that they lack subject matter jurisdiction over the plaintiff's claims. *See e.g. id.* at *1 ("[T]he court must dismiss the complaint because the Eleventh Amendment deprives the court of subject-matter jurisdiction to hear the claim[.]"); *Picozzi*, 313 F. Supp. 3d at 602 ("Even if Picozzi's Complaint asserted a non-frivolous claim for relief, the Court lacks subject-matter jurisdiction over the Complaint."); *Lee v. Law Firm of Gay & Chacker, Esq., P.C.*, No. CIV. A. 95-4791, 1995 WL 489124, at *1 (E.D. Pa. Aug. 8, 1995) ("If the court lacks subject matter jurisdiction, the case is frivolous [within the meaning of Section 1915] and should be dismissed."); *Rodriguez-Isona v. Rendell*, No. CIVA. 1:08-CV-0403, 2008 WL 1787548, at *1 (M.D. Pa. Apr. 17, 2008) ("[I]t is recommended that this action be dismissed for lack of subject-matter jurisdiction and because the action is frivolous and malicious.").

Finally, courts employ less stringent standards when considering *pro se* pleadings than when judging attorney work product. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Thus, the Court will "liberally construe" Mr. Parker's pleadings, and "apply the applicable law, irrespective of whether [he] has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *see Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Even so, application of this liberal standard does not relieve Mr. Parker of the obligation to allege sufficient facts to establish jurisdiction and support a cognizable legal claim.

## III. <u>Discussion & Analysis</u>

### A. **The Court grants Mr. Parker's motion to proceed *in forma pauperis*.**

At the threshold, the Court must evaluate Mr. Parker's financial status to determine whether he is eligible to proceed without paying fees. The Court has reviewed Mr. Parker's representations regarding his financial condition

and, based on those representations, agrees that he is unable to pay fees. Thus, the Court will grant Mr. Parker's motion.

## B. Mr. Parker's complaint must be dismissed, because his claims against Cherokee Nation officials are barred by tribal immunity.

Having determined that Mr. Parker may proceed *in forma pauperis*, the Court "must review the pleadings and dismiss the matter if it determines that the action is frivolous, malicious, or fails to set forth a proper basis for this Court's subject matter jurisdiction." *Duglas*, No. 19-CV-3010, 2019 WL 3230931, at *1; *see* 28 U.S.C. 1915(e)(2)(B). Here, even when liberally construed, the Court lacks subject matter jurisdiction over Mr. Parker's claims because they are inevitably barred by the doctrine of tribal immunity.

"Indian tribes are domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (internal quotation marks omitted). Unless Congress provides otherwise, they remain "separate sovereigns pre-existing the Constitution." *Id.*

"Among the core aspects of sovereignty that tribes possess … is the common-law immunity from suit traditionally enjoyed by sovereign powers." *Id.* (internal quotation marks omitted); *see* The Federalist No. 81 (Hamilton) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."). As a result, "tribal immunity precludes subject matter jurisdiction in an action against an Indian tribe." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015–16 (9th Cir. 2007).

This inherent immunity "is subject only to Congressional authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Ordinance 59 Ass'n v. U.S. Dep't of Interior Sec'y*, 163 F.3d 1150, 1154 (10th Cir. 1998) (internal quotation marks omitted). That said, "[t]ribe members are amenable to suit" if the suit is "not related to a tribe officer's performance of official duties." *In re Stringer*, 252 B.R. 900, 901 (Bankr. W.D. Pa. 2000).

Here, while Mr. Parker has named three individual tribe members as defendants (and not the tribe itself), he identifies those individuals as the Cherokee Nation's "Principle Chief," "Registration Supervisor," and "Registration" agent. More importantly, the complaint does not identify any conduct that is conceivably "not related" to Defendants' "performance of official

duties" for the Cherokee Nation. *In re Stringer*, 252 B.R. at 901. Indeed, Mr. Parker repeatedly refers *only* to the actions of "[t]he Cherokee Nation," which, he claims, "ignored [his family's] history, by not recognizing that [they] are Indians by blood." [ECF 1-1 at p. 6]; *see also* [*Id.* at p. 4] ("We applied twice and was denied, because the Cherokee Nation ignored, they said you have to be on the final rolls of 1899 to 1906.").

The only reasonable way to read these allegations is as asserting claims against Defendants in their capacity as tribal officials. So-called "official capacity" suits are subject to sovereign immunity and construed as suits against the sovereign itself. *See Goodfellas, Inc. v. Dunkel,* No. 3:15-CV-1633, 2016 WL 6599977, at *6 (M.D. Pa. Nov. 8, 2016) ("An official capacity suit against a municipal officer is simply another way of pleading the same action against the municipality itself."); *Rosa-Diaz v. Overmyer*, No. CV 17-215, 2018 WL 3850732, at *8 (W.D. Pa. July 20, 2018) ("Official capacity suits have been construed as nothing more than claims against an official's employer—the state.").

As a result, Mr. Parker's claims are subject to tribal immunity and must be dismissed if they do not fall within a specific exception created by Congress. *See Bay Mills Indian Cmty.*, 572 U.S. at 789 ("[W]e have time and again … dismissed any suit against a tribe absent congressional authorization[.]"). To create such an exception, "Congress must 'unequivocally' express that purpose." *Id.* at 790.

No exception to tribal immunity could apply here. To the contrary, "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n. 32 (1978). Indeed, "no right is more integral to a tribe's self-governance than its ability to establish its membership." *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989). As a result, "tribal immunity bars suits to force tribes to comply with their membership provisions, as well as suits to force tribes to change their membership provisions." *Lewis v. Norton*, 424 F.3d 959, 961 (9th Cir. 2005).

Federal courts confronted with challenges to all manner of tribal membership disputes have repeatedly reached this same conclusion. That is, "a membership dispute is an issue for a tribe and its courts." *Smith v. Babbitt*, 100 F.3d 556, 558 (8th Cir. 1996); *see, e.g. Williams v. Gover,* 490 F.3d 785, 789

6

(9th Cir. 2007) ("Plaintiffs have an insuperable problem with their case. An Indian tribe has the power to define membership as it chooses, subject to the plenary power of Congress."); *Smith*, 100 F.3d at 558 (8th Cir. 1996) ("One such aspect of this sovereignty is the authority to determine tribal membership."); *Ordinance 59 Ass'n*, 163 F.3d at 1157 ("No matter how this case is approached, [plaintiff] is asking this court to step in and tell a tribal government what to do in a membership dispute."); *Lincoln v. Saginaw Chippewa Indian Tribe of Michigan*, 967 F. Supp. 966, 967 (E.D. Mich. 1997) ("[T]his action is essentially a tribal membership dispute over which this court lacks jurisdiction.'"); *Jeffredo v. Macarro*, No. CV 07-1851-JFW (PLAX), 2007 WL 9728449, at *3 (C.D. Cal. Dec. 4, 2007) ("Because Indian tribes' ability to make membership decisions is well-established, it is also well-established that the district courts do not have jurisdiction in cases involving disputes over membership issues."); *Shattuck v. Lucero*, No. CV 04-1287 JB/RHS, 2005 WL 8163560, at *5 (D.N.M. Aug. 25, 2005) ("The Supreme Court has long held that an Indian tribe has the exclusive power to confer or withdraw tribal membership.").

In short, the Court simply lacks the power to intrude on tribal sovereignty and grant Mr. Parker the relief he seeks, no matter "[w]hether federal intervention would be right, wrong, or well-intentioned[.]" *Ordinance 59 Ass'n*, 163 F.3d at 1157. Thus, because Mr. Parker's claims are barred by tribal immunity, his complaint "fails to set forth a proper basis for this Court's subject matter jurisdiction" and must be dismissed. *Duglas*, No. 19-CV-3010, 2019 WL 3230931, at *1.

Since the Court lacks jurisdiction over any dispute challenging a denial of tribal membership, amendment of the complaint would be futile. The Court will therefore dismiss Mr. Parker's claims without leave to amend. But this dismissal will also be without prejudice—both because dismissal of an *in forma pauperis* complaint "does not prejudice the filing of a paid complaint making the same allegations," *Denton v. Hernandez*, 504 U.S. 25, 34 (1992), and because dismissals for lack of subject matter jurisdiction are "by definition without prejudice." *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n. 8 (3d Cir. 2011). Thus, if Cherokee Nation provides a tribal forum for Mr. Parker to challenge the denial of his membership, he may attempt to

re-assert his claims there (subject, of course, to timeliness or other requirements applicable to that process).[2]

A corresponding order follows.

DATED: November 25, 2019

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[2] Mr. Parker may well be able to at least attempt to pursue a remedy through the tribal courts or another tribal process. *See e.g. Douglas v. Confederated Tribes of Grand Ronde*, No. C-01-07-003, 2004 WL 5606447 (Grand Ronde Tribal Ct. Oct. 6, 2004) (discussing standard of review governing "appeals from decisions of [a tribal] Enrollment Committee.'")). Indeed, while it is unclear if Mr. Parker timely availed himself of the opportunity, the membership denial letters attached to the complaint reflect that Mr. Parker could have appealed his denial of membership to the Cherokee Nation Registrar within 30 days of that decision. [ECF 1-15 at pp. 1-2].